# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALAN LAWRENCE WITT,

        Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 332940
Otsego Circuit Court
LC No. 15-005014-FH

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals by right from his conviction following a jury trial of delivering/manufacturing marijuana, MCL 333.7401(2)(d)(3). The jury deadlocked on one count of possession with intent to deliver marijuana, MCL 333.7401(2)(d)(3),[1] and acquitted defendant on one count of maintaining a drug house, MCL 333.7405(d). The court sentenced defendant to 180 days in jail and 18 months' probation. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arose out of defendant's transfer of marijuana to Arnold Czarnecki at a medical marijuana dispensary. Czarnecki presented a valid state registry card, but, unbeknownst to defendant, he was a confidential informant. Before trial, the trial court held a hearing to determine whether defendant was entitled to present a § 8 defense under the Michigan Medical Marihuna Act (MMMA), MCL 333.26421 *et seq*. The only issue in this case is whether the trial court erred in denying defendant's motion to present a § 8 defense.

The trial court held a pre-trial evidentiary hearing to determine whether there was evidence to support the § 8 defense. At the hearing, defendant testified that he worked at a medical marijuana dispensary "[h]elping out patients with their medicine." He explained that "People come in. You check their cards. You ask for I.D.'s and they get their medicine." Defendant affirmed that Arnold Czarnecki came to the dispensary "around May 26th of 2015" and "supplied a valid medical marihuana card and a valid I.D. when he came through the door."

---

[1] Dismissed nolle prosequi.

-1-

Defendant testified that the presentation of the medical marijuana card informs him that the person in possession of the card has "a bona fide relationship with their doctor" and that they "can have two and a half ounces of medical marihuana for personal use."

Defendant testified that he sold Czarnecki "an eighth of T-Rex. A gram of Papaya and a marihuana pot brownie." In total, this amounted to about 4.5 grams of "usable" marijuana. Defendant explained that he never dispenses more than 2.5 ounces to an individual patient because, in his understanding, the medical marijuana card entitled a patient to up to 2.5 ounces of marijuana for personal medical use. Defendant testified that he did not ask for other medical documents to determine what a "reasonable amount" for Czarnecki would be. Defendant was aware that Czarnecki was age 71 and that 4.5 grams would be a "reasonable amount for any medical marijuana patient." However, defendant did not know how much Czarnecki used on a day-to-day basis for medical purposes. Defendant testified that he dispensed marijuana based on what customers asked for, but no more than 2.5 ounces. Defendant explained as follows:

> *Q.* So isn't it true Mr. Witt that the only factor you use in deciding how much medical marihuana to sell somebody is how much they want to buy as long as it's two and a half ounces or less? Yes or no?
>
> *A.* Yes, because they self-medicate. And the State itself put that two and a half ounces as to - -
>
> * * *
>
> *Q.* Isn't it true Mr. Witt that the only basis you use to decide how much *medical marihuana to dispense to somebody is based upon the amount that their requesting* as long as it's less than . . . two and a half ounces and their paying for it? Yes or no?
>
> *A.* Yea. [Emphasis added.]

Defendant also testified that the amount he dispensed was "a reasonable amount for any marihuana patient to have. Especially [because Czarnecki] had to drive all the way from Pellston, Michigan." When asked if he had sold Czarnecki less than two and a half ounces, defendant replied, "Like fractions less. Like less than a sixteenth of what he should have." He further testified that he would not sell more than two and a half ounces of usable marijuana to a patient at any given time "[b]ecause their cards only allow them to have two and a half ounces of marihuana."

Czarnecki affirmed that in May of 2015 he was a medical marijuana patient and had a valid medical marijuana registration card issued by the State of Michigan. Czarnecki testified that he had a primary care doctor that he had been seeing for approximately fifteen years. However, Czarnecki testified, he did not go to see this doctor to obtain the medical marijuana card. Rather, he spoke with another doctor, through Skype in "the spring of 2014," and received his registration card in fall 2014. Czarnecki admitted that the physician's recommendation letter "indicate[s] that the physician signed off that he . . . conduct[ed] an in person examination" and that "he had a chance to review [Czarnecki's] medical information" and records. Czarnecki affirmed that he was seeking the use of medical marijuana for chronic pain and that the doctor

-2-

recommended the drug for that use. He explained that when he was using the drug, he would use less than a gram a day. After trying marijuana for the first month in fall 2014, Czarnecki testified that he stopped using it because it did not "do anything for me." After fall 2014, Czarnecki did not use the drug again, but he did maintain a valid registration card in May 2015, when he purchased marijuana from defendant. Czarnecki testified that he presented a valid medical marijuana card, a driver's license and money at the dispensary where defendant worked and defendant sold him marijuana.

After hearing the testimony from defendant and Czarnecki, the trial court heard argument from the parties, and ruled on the motion:

> There are three elements that have to be shown. And the defense has to prove each of those elements. They have to make a prima facie showing at the beginning. And then in order to successfully have a case dismissed under a Section 8 defense they must prove all the elements by a preponderance.

> Those elements are; number one that a doctor has stated after full assessment of the patients history and current condition, it's made in the course of a bona fide doctor patient relationship. That the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana.

> Number two that the patient and the defendant . . . were collectively in possession of a quantity that's not more than reasonably necessary to ensure uninterrupted availability of the marihuana for use by the patient.

> And third that the patient and the defendant were engaged in the possession and the delivery of the marihuana to treat or alleviate a patient's condition.

> * * *

> In this case, and I think [defense counsel] has conceded that there are questions, at least questions of fact, and so the court does not find it's appropriate to dismiss the charges based on Section 8. In looking at the elements and the proofs submitted as to each of the elements.

> First on that there's a bona fide physician patient relationship. I find that the defendant has at least created a question of fact as to that element and made a prima facie showing.

> Certainly if I was the fact finder I'm not sure I would find there's a relationship there. The, the patient in this case, Mr. Czarnecki only talked to the doctor once. Never talked to him before. Never talked to him after. It's apparent that the communication was by electronic means and that the only purpose for that was to obtain a medical marihuana card.

> However though as [defense counsel] correctly pointed out the court's not sitting as a fact finder on that issue and the court is merely to determine whether a

-3-

prima facie showing has been made. I think certainly with regard to that element there has been a prima facie showing.

With regard to element two. That the defendant and Mr. Czarnecki were collectively in possession of a quantity reasonably necessary to ensure an uninterrupted supply. Both [defendant] and Mr. Czarnecki testified that the only information that was really exchanged between the two was Mr. Czarnecki's driver's license and his medical marihuana card.

Under the case law, particular Hartwick,[2] it's been cited by the parties today during the course of argument, it's very clear that mere possession of the card does not establish prima facie evidence of any of the elements of a Section 8 defense. There's got to be more evidence over and above the mere possession and proof of registry and a card.

In this case there was no evidence through testimony that [defendant] asked Mr. Czarnecki how much he normally would use to treat his condition. There's no evidence that [defendant] asked Mr. Czarnecki anything about his particular condition to attempt to ascertain how much and what needs Mr. Czarnecki might have based on his particular condition.

It's apparent from the testimony and, and from [defendant's] testimony that really the only thing that he based his decision in this case on was how much Mr. Czarnecki asked for. The fact that he had a card and that he wasn't asking for an amount over two and a half ounces.

So the court finds that there isn't any evidence that's been presented by the defendant that he had any information which would help him or allow him to make a determination as to what would be a reasonable amount for Mr. Czarnecki to use. And so the court finds that there has not been a prima facie showing with regard to element number two.

With regard to element number three . . . . Again, under Hartwick merely possessing a card is not enough to establish prima facie evidence of this element.

Again, by [defendant's] testimony it's clear that this was more in the nature of a business transaction. That [defendant] did not have any actual knowledge of what Mr. Czarnecki's condition was. And whether or not he was actually using the marihuana he was being sold to treat that condition.

The case law, again requires that the defendant has to provide proof as a caregiver that the patient's use is for a medical purpose. And in this case we

---

[2] *People v Hartwick*, 498 Mich 192; 870 NW2d 37 (2015).

-4-

don't have any proof of that. No evidence was submitted of that. So again, the court finds there is no prima facie showing as to element three.

Based on that the court is going to deny the motion based on the failure to make out a prima facie case on two of the three elements. And the defendant will not be able to present a Section 8 defense to the jury.

Defendant was not permitted to present the §8 defense at trial and he was convicted and sentenced as set forth above. This appeal ensued.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's ruling on whether an affirmative defense may be raised, see *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010), and the findings of fact underlying its ruling for clear error, *People v Bylsma*, 493 Mich 17, 16; 825 NW2d 543 (2012). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993).

## III. ANALYSIS

Under the MMMA, a defendant charged with a marijuana-related offense may assert a § 8 defense if the defendant presents evidence supporting the following three elements:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428.]

"[I]f a defendant establishes these elements and no question of fact exists regarding these elements, then the defendant is entitled to dismissal of the criminal charges." *People v Hartwick*, 498 Mich 192, 227; 870 NW2d 37 (2015). However, "if questions of fact exist, then dismissal of the charges is not appropriate and the defense must be submitted to the jury." *Id*. (quotation marks and citations omitted). Additionally,

> if a defendant has not presented prima facie evidence of each element of § 8 by present[ing] evidence from which a reasonable jury could conclude that the defendant satisfied the elements of the § 8 affirmative defense . . . then the circuit court must deny the motion to dismiss the charges and the defendant is not permitted to present the § 8 defense to the jury. [*Id*. (quotation and citations omitted).]

As noted above, the trial court found that there was a question of fact regarding element 1, but determined that defendant did not present sufficient evidence to create issues of fact regarding elements 2 and 3. Defendant challenges the trial court's findings with respect to the second and third elements.

The second element requires that a defendant present evidence that:

> The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition . . . .

Standing alone, proof of a medical marijuana registry card is insufficient for a defendant to meet his burden of proof under this element. Our Supreme Court has explained that, "[t]he issuance of a registry identification card or compliance with the volume limitations in § 4 does not show that an individual possesses only a 'reasonably necessary' amount of marijuana to ensure uninterrupted availability for the purposes of § 8(a)(2)." *Hartwick*, 498 Mich at 234-235. "A registry identification card simply qualifies a patient for the medical use of marijuana. It does not guarantee that an individual will always possess only the amount of marijuana allowed under the MMMA." *Id*.

Similarly, compliance with the volume limits set forth in § 4 does not create a "presumption of compliance" with § 8(a)(2). *Id*. Instead, a defendant must show that the amount of marijuana at issue was "reasonably necessary to ensure uninterrupted availability of marihuana [for treatment]...," and "a primary caregiver may reasonably rely on the amount his or her patient states is needed to treat the patient's debilitating medical condition." *Id*. Our Supreme Court has explained that, for purposes of § 8(a)(2),

> Primary caregivers must establish the amount of usable marijuana needed to treat their patients' debilitating medical conditions and then how many marijuana plants the primary caregiver needs to grow in order ensure "uninterrupted availability" for the caregiver's patients. This likely would include testimony regarding how much usable marijuana each patient required and how many

-6-

marijuana plants and how much usable marijuana the primary caregiver needed in order to ensure each patient the "uninterrupted availability" of marijuana. [*Id.*]

In this case, with respect to § 8(a)(2), the trial court found that defendant did not present any evidence to show that he had "any information which would help him or allow him to make a determination as to what would be a reasonable amount for Mr. Czarnecki to use." This amounted to clear error. As noted above, for purposes of the second element, in determining the quantity of marijuana that is "not more than was reasonable necessary to ensure the uninterrupted availability of marihuana for the purposes of treating or alleviating the patient's [medical condition]," a caregiver "*may reasonably rely on the amount his or her patient states is needed* to treat the patient's debilitating medical condition." *Hartwick*, 498 Mich 234-235 (emphasis added). Here, defendant testified that he dispensed marijuana, up to 2.5 ounces, based on the amounts that each patient requested because the patients "self-medicated." Defendant was entitled to rely on Czarnecki's representations with respect to the quantity of marijuana that was reasonable necessary to treat Czarnecki's medical ailments. Czarnecki represented to defendant that he was a medical marijuana patient; he appeared at a medical marijuana dispensary and presented his valid registry card and a driver's license. Czarnecki then represented to defendant that he needed a certain amount of marijuana. Defendant was entitled to rely on Czarnecki's representations in determining a reasonable quantity to dispense to Czarnecki for his medical condition. *Id.*

Moreover, Czarnecki testified that when he used the drug, he would use less than a gram a day to treat his medical condition. Defendant provided Czarnecki with an eighth of an ounce of a strain of marijuana, a gram of another strain, and one marijuana brownie. In total, defendant testified that he dispensed about 4.5 grams of "useable" marijuana and the brownie. Defendant relied on Czarnecki's representation of how much he needed and defendant determined that the requested amount was reasonable given the distance Czarnecki traveled to obtain the marijuana and given Czarnecki's age. Consideration of the distance that Czarnecki traveled was relevant to ensuring that the patient had an "uninterrupted supply," of marijuana for medical use. Defendant also considered Czarnecki's age, 71, in determining that 4.5 grams was not an unreasonable request. Furthermore, by presenting the medical marijuana registry card, and then requesting a specified amount of marijuana, Czarnecki represented that he had a medical ailment and that the requested amount was a quantity that was needed to treat the ailment. On this record, there was a question of fact to support the second element of a § 8 defense; in otherwords, a reasonable jury could conclude that defendant dispensed into Czarnecki's possession "a quantity of marihuana that was not more than was reasonable necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition. . . ." MCL 333.26428(2); *Hartwick*, 498 Mich at 227.

The third element of a § 8 defense requires that defendant submit evidence of the following:

The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

A registry identification card, standing alone, is insufficient to prove § 8(a)(3); "[a] registry identification card merely qualifies a patient for the medical use of marijuana. It does not establish that at the time of the charged offense, the defendant was actually engaged in the protected use of marijuana." *Hartwick*, 498 Mich at 237. Instead, a caregiver would "have to present prima facie evidence of . . . any patients' use of marijuana for a medical purpose." *Id.*

In this case, the trial court held that defendant dispensed marijuana in more "in the nature of a business transaction." The court noted that defendant did not have "any actual knowledge of what Mr. Czarnecki's condition was. And whether or not he was actually using the marijuana he was being sold to treat that condition." This finding was not clearly erroneous. Here, other than presenting a medical marijuana card, Czarnecki did not present any other information to defendant to indicate that the amount of marijuana requested would be used for the treatment of a medical condition. As noted above, *Hartwick* held that a medical marijuana card standing alone is insufficient to prove a prima facie affirmative defense under § 8(a)(3). Here, apart from the card, there was no evidence that the transfer was made for the purposes of treating a medical condition. Indeed, Czarnecki testified that he stopped using the marijuana for medical purposes in fall 2014. Accordingly, the court did not err in finding that there was no question of fact regarding the third element of a § 8 defense.

In sum, because defendant did not present evidence to create a question of fact on each of the three elements of a § 8 defense, we cannot conclude that the trial court abused its discretion in denying defendant's motion to present a § 8 defense.

Affirmed.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray
/s/ Stephen L. Borrello